# Myers *v.* Myers.

*Devise—Will—Oral evidence to identify subject-matter.*

Where it is uncertain what land is included in a devise, oral evidence is admissible to identify the subject-matter of the devise.

The intention of a testator is to be determined from the words written in his will. If his wishes with regard to the disposition of his property, as thus expressed, can be applied to the existing conditions of that property, the result must be accepted. It is not competent to show by declarations of the testator made at the execution of his will or subsequently, that he intended a devise to include something that is excluded by the terms of the will as executed.

Where testator devises a property, describing it by a number of a street, "and also all the personal property contained therein," and it appears that this property was the residence of testator at the time of his death, the devise cannot be construed to include more than the dwelling house and its immediate curtilage, by evidence which in effect was, that many years prior

to the making of the will and of defendant's death, which were only a few days apart, defendant bought a lot which extended from one street to another; that he built his dwelling on one end of the lot, and a carpenter shop on the other end; that subsequently he remodeled the carpenter shop into a dwelling house, which was then given a number on the back street, and was rented to tenants; that shortly thereafter testator caused to be erected across the lot a substantial board fence without any gate or opening in it, and that the two houses with the lots respectively appurtenant, continued to be used in the manner described until the death of the testator.

Argued Nov. 16, 1900. Appeal, No. 189, Oct. T., 1900, by defendant, from judgment of C. P. Lancaster Co., Nov. T., 1897, No. 17, on verdict for plaintiff in case of Abraham Myers, Christian Myers, Charles Myers, Harvey Myers, Linda Warfel and Martha Schmalbach v. Alvildia Myers. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Ejectment for a lot in the city of Lancaster. Before LIVINGSTON, P. J.

The court gave binding instructions for plaintiff. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*B. F. Davis*, for appellant.—The descriptions of the property in the deed and in the will are almost identical, except there is no mention of measurements or boundaries in the will. It is needless to state that if an instrument, be it a will or deed, passes the title to the land, the buildings go with it: Woods's App., 18 Pa. 478; Stuven v. Kalchreuter, 8 W. N. C. 44; Kelly's Est., 8 Pa. Dist. Rep. 51.

The term "property" signifies the interest or right which one has in lands or chattels, and is as indicative of the intention to pass the whole right of the testator as the word "estate:" Foster v. Stewart, 18 Pa. 23.

*W. H. Keller* and *J. A. Coyle*, for appellees.—The case is ruled by Thompson v. Kaufman, 9 Pa. Superior Ct. 305.

OPINION BY W. D. PORTER, J., March 19, 1901:

What land passed to the defendant under the will of Ben-

jamin F. Myers, her deceased husband? This was the issue presented upon the pleadings at the trial of this cause in the court below. The will of Benjamin F. Myers was in these' words: "I to-day will and bequeath unto my wife, Alvildia Myers, the property located on North Queen street, in the City of Lancaster, Lancaster Co., Pa., numbered 612 North Queen Street, and also all the personal property contained therein, and the rest of my real and personal estate to be disposed of as the law directs." There are here no repugnant clauses to be reconciled. The words which the testator adopted to express his intention involve no patent ambiguity. There can be no uncertainty as to the person who was to take the house numbered 612 North Queen street and the personal property of the testator therein contained. The controversy arose in applying the devise to the subject-matter. There was no evidence nor offer to prove that there were two streets in the city of Lancaster named North Queen, or that the decedent was seized of more than one property on the street of that name. There was but one property to which the devise could apply. The dispute was as to the boundaries of the property to which the devise applied.

There can be no question that oral evidence was admissible to identify the subject-matter of the devise; for this purpose it was competent to show what land had been included in the curtilage of the house No. 612 North Queen street, and what monuments had been established upon the ground by the decedent in his lifetime. The following facts were undisputed, viz: in 1891, the testator entered into articles of agreement for the purchase of an unimproved lot extending through from North Queen street to Market street; he built a two-story dwelling house fronting on North Queen street, and upon the Market street end of the lot he erected a two-story brick building to be used as a carpenter shop. Upon the completion of the buildings he occupied the dwelling as his residence and used the carpenter shop as his place of business. While the property was in this condition, on March 29, 1892, those from whom he had purchased conveyed to him the legal title, describing the property in these words: "All that certain two story brick dwelling house, with a two-story back building, and lot or piece of ground thereto belonging. Situate No. 612 on the west side of North

Queen Street, Lancaster City, Pa. Containing in front on said North Queen Street sixteen feet and eleven inches, and extending in depth westward of that width 245 feet, more or less, to Market Street." After having used the building fronting on Market street as a carpenter shop for about eighteen months, the decedent remodeled that building, put in partitions, and changed it into a dwelling house, which was numbered and has since been known as No. 611 North Market street. The house No. 611 North Market street has since been rented to and occupied by tenants. Shortly after the North Market street building was remodeled the decedent caused to be erected across the lot a substantial board fence, and the lot used in connection with the building fronting on North Queen street, testator's residence, was thus separated from that used in connection with the tenement house No. 611 North Market street. There was no gate or opening through from one lot to the other. The two houses, with the lots respectively appurtenant, continued to be used in this manner down until the death of the testator, in April, 1897. This will was executed a few days before the death of the testator.

Here was a devise of a property which for years had been used by the testator as his residence, and, in the same sentence of the will, a bequest of the personal property which the residence contained; the lot which had been used in connection with the dwelling was enclosed by a fence and adjacent buildings. The house No. 611 North Market street had been devoted by the testator to other purposes, and he had set apart a lot of ground to be used in connection with the house No. 611, North Market street by the tenants who occupied that property. If, instead of running through to Market street, the original purchase of the testator had only been half as deep, but contained double the frontage on North Queen street, and the carpenter shop had been erected on the additional frontage on North Queen street, and had been subsequently changed into a dwelling house, No. 614 North Queen street, and a fence erected dividing the lot longitudinally, precisely the same question would have arisen. In that case, however, it would scarcely be even contended that a devise of 612 North Queen street would include No. 614, upon the same street. The property No. 612 North Queen street, as it had been used by the testator, and by him

designated and separated from his other property by the erection of a fence, answered the terms of the devise to his wife, without addition or alteration.

The intention of the testator is to be determined from the words written in his will. If his wishes with regard to the disposition of his property, as thus expressed, can be applied to the existing condition of that property, the result must be accepted. It is not competent to show by declarations of the testator made at the execution of his will or subsequently, that he intended a devise to include something that is excluded by the terms of the will as executed. When the subject-matter of this devise came to be ascertained there was, under the existing conditions of the testator's property and the boundaries marked upon the ground, no doubt or uncertainty calling for explanatory proof. The offer of the defendant to prove what the testator said at the execution of the will was properly excluded. All the assignments of error must be determined against the appellant, upon principles so well recognized that discussion is unnecessary : Thompson v. Kaufman, 9 Pa. Superior Ct. 305 ; Willard's Estate, 68 Pa. 327 ; Best v. Hammond, 55 Pa. 410 ; Wursthoff v. Dracourt, 3 Watts, 243 ; Asay v. Hoover, 5 Pa. 21 ; Root's Estate, 187 Pa. 118.

The rulings of the learned judge of the court below were free from error.

The judgment is affirmed.