# Hunter *v.* Hunter, Appellant.

*Evidence—Cross-examination—Ejectment.*

In an action of ejectment, where the issue is the location of an "old coal bank" mentioned in a will, and the plaintiff calls a witness who testifies as to his knowledge of the land, and the location of an old coal bank, such witness may be cross-examined as to whether there was not another coal bank on the land at the time the will was made.

*Ejectment—Will—Extrinsic evidence—Parol evidence.*

In an action of ejectment where the issue turns on the location of an "old coal bank in the flat," mentioned in a will, and the testimony shows uncertainty as to what was designated as a coal bank, the plaintiff may be permitted to prove that testator always called certain depressions coal holes, while he always referred to a particular depression, further away and on sloping ground, as the old coal bank.

The general rule is, that parol evidence is admissible only to explain latent ambiguities or to apply provisions of a will to the subject or person intended, where the description is defective, uncertain, or too general to be understood specifically. When the process of identification of the subject-matter of the devise shows the existence of a subject which fully satisfies the terms of such devise, the object of that process, which is simply to apply a direction that would otherwise remain inoperative, is accomplished, no uncertainty is left to be cleared away, and it is not competent to show by further parol evidence that the testator actually intended to include something which is by the terms of his will excluded.

There is no latent ambiguity in an instrument shown by extrinsic evidence, unless that evidence establishes that the description contained in the instrument is equally applicable to two distinct locations.

*Wills—Ambiguity—Declarations of testator—Description of land—Extrinsic evidence.*

Testator by his will directed as follows: "I will and bequeath unto my nephew J, all that portion of my farm lying west of the road, running through my farm from south to north, except that portion which lies along the Brush Run, all south of the old coal bank in the flat. I will and bequeath unto my nephew W, all that portion of my farm lying east of the road before mentioned, together with portion lying south of the old coal bank above mentioned." In an action of ejectment between the parties claiming under the will, a dispute arose as to the location of the old coal bank. The plaintiff contended that the coal bank was on a slope while the defendant contended that the bank referred to was a coal bank in the flat. *Held,* that it was reversible error to permit the plaintiff to prove by declarations of the testator, that the line which he intended ran to a coal bank on the hillside.

Oral declarations of the testator as to the disposition which he had made of his property cannot be offered in evidence to vary the disposition of that property which he had made by his written will.

Where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will, from necessity, to explain that which would otherwise have had no operation.

Argued April 20, 1908. Appeal, No. 53, April T., 1908, by

defendant, from judgment of C. P. Westmoreland Co., Aug. T., 1904, No. 688, on verdict for plaintiff in case of William A. Hunter v. Mary A. Hunter.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Ejectment for land in Mt. Pleasant Township.   Before DOTY, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions, particularly referred to in the opinion of the Superior Court.

*John E. Kunkle*, with him *Edward E. Robbins*, for appellant, cited as to oral testimony as to the declarations of John Galloway: Wusthoff v. Dracourt, 3 Watts, 240; Best v. Hammond, 55 Pa. 409; Iddings v. Iddings, 7 S. & R. 111; Myers v. Myers, 16 Pa. Superior Ct. 511; Thompson v. Kaufman, 9 Pa. Superior Ct. 305; Willard's Est., 68 Pa. 327.

*James S. Beacon*, with him *David L. Newill* and *Cecil E. Heller*, for appellee, cited: Vernor v. Henry, 3 Watts, 385; McAfee v. Magee, 4 Penny. 94; Brownfield v. Brownfield, 12 Pa. 136; Coleman v. Eberly, 76 Pa. 197.

OPINION BY PORTER, J., October 12, 1908:

The plaintiff and the defendant in this action of ejectment both claimed title under the will of John Galloway.  The devises in said will which have any bearing on this controversy. being in the following words, viz.: "I will and bequeath unto my nephew, James Hunter, all that portion of my farm lying west of the road, running through my farm from south to north, except that portion which lies along the Brush Run, all south of the old coal bank in the flat.  I will and bequeath unto my nephew, William Hunter, all that portion of my farm lying east of the road before mentioned, together with that

portion lying south of the old coal bank above mentioned.''
Mary A. Hunter, the appellant, has succeeded to the title
which passed to James Hunter, under said will. The plaintiff
recovered a judgment in the court below and the defendant
appeals.

The land in dispute lies west of the road mentioned in the
will and the question turned at the trial upon the location of
the "old coal bank in the flat." The plaintiff contended that
the coal bank referred to was located at a slight depression, or
bench in the hillside, several hundred feet north of the line
where the land began to rise above the strictly flat or level land
near Brush Run, and that there was no coal bank in the flat land
near the run. The appellant contends, and produced evidence
which she asserts established, that there was, at the time the
will was executed and, also, when it went into effect, a coal
bank in the flat. There was no ambiguity in the will, the
doubt, if any arises, is produced by extrinsic evidence, in ap-
plying the will to the subject-matter. The plaintiff, having
offered the will in evidence, called as a witness John Crise and
stated a purpose "to prove by this witness the location of the
old coal bank mentioned in this will." The first material ques-
tion asked of this witness, by the plaintiff, was whether he was
familiar with the John Galloway farm, and the answer was in
the affirmative. The plaintiff then proceeded to ask the wit-
ness question after question, as to how long he had lived on the
farm and upon what parts of it he had worked, and then pro-
ceeded to interrogate him as to the location of the old coal
bank. The witness testified that there was a depression in the
ground where they said there was an old coal bank, but that he
had never seen down into the coal bank, nor seen it open, that
there was slack coal lying around there, where he presumed
they had taken coal out, and that this depression was located
400 or 500 feet north of the present line fence between the
plaintiff and the defendant. The witness was asked by the de-
fendant as to the lay of the land from this slack coal, at the
depression to which he referred, south to the fence, and replied:
"Well, it lays flat there, a little bit rolling from the depres-
sion down to the line of the fence." The defendant proposed

to ask this witness, on cross-examination, whether there was not another coal bank in the flat ground along Brush Run, from which coal was actually mined at the time he was on the farm and at the time the will was made, for the purpose of testing his knowledge of the coal banks on this farm. The plaintiff objected to this question, as not cross-examination, the objection was sustained, with an exception to the defendant. The witness having testified, under examination by the plaintiff, as to his familiarity with the farm and the location of the old coal bank upon it, the defendant had a right to ask him any question. which directly tended to test the truth of his statement that he was familiar with the farm. In view of the declared purpose of the plaintiff, to prove by this witness the location of the old coal bank mentioned in the will, we are of opinion that the defendant should have been permitted, in cross-examining this witness, to ask him whether there was a coal bank in the flat, and nearer to Brush Run than the depression to which he had testified. The first specification of error is sustained.

The article of agreement between William A. Hunter and Robert S. Jamison, and the deed of Hunter to William Thaw, did not contain anything which could, by reasonable implication, be held to be an admission of title in James Hunter, or those claiming under him, to the land in dispute, and the second, third and eighth specifications of error are dismissed.

The plaintiff having produced evidence tending to show that the old coal bank was located on the sloping land, rested. The defendant produced evidence which would have warranted a finding that at the time the will was executed and at the time it went into effect there was one, possibly more than one, opening in the flat land from which coal had been and was being mined. The plaintiff in rebuttal, then produced evidence tending to establish that the coal which had been taken from the flat land had been obtained by merely stripping off the small quantity of earth lying over the coal on this level land and then removing small quantities of coal, that this had been done in several places; that these workings were mere temporary expedients for obtaining small amounts of coal, and that none of these workings were of such a character that they could be

called a bank. If there was actually a coal bank in the flat land along Brush Run in existence at the time the will was executed, that fact would fix the line in controversy in this case, and the plaintiff could take nothing north of it; the conflicting evidence raised no doubt as to the intention of the testator, that is fixed by the words of his will, but the doubt, created by extrinsic evidence, is as to the location of the old coal mine in the flat. Whether there was a coal mine in the flat, and the location thereof, must be determined by the jury. Whether the depressions, now filled with water, in the flat land near Brush Run had resulted from the opening and regular operation of a coal bank or mine, or from mere strippings of a slight amount of earth immediately above the coal and digging down into the stratum for the purpose of obtaining a small quantity for mere present use, without any intention of making a permanent mine, removing the stratum of coal and supporting the superincumbent earth, was a question of fact, concerning which a substantial doubt had been raised. The character of these depressions in the flat having been rendered uncertain by the evidence, it was competent to show how the testator had regarded and dealt with them. This not for the purpose, however, of changing or modifying the language which he employed in disposing of his property. This was the condition of the evidence when the plaintiff proposed to prove that the testator had always called the depressions near Brush Run, "coal holes" and had always referred to the depression on the sloping ground farther from the run, as the old coal bank. We are of opinion that this testimony was admissible for the purpose of showing the names by which the testator had always designated physical objects upon his land, the true nature of such physical objects and the names by which they could properly be designated having already, by the evidence, been shown to be uncertain. The fourth and fifth specifications of error are dismissed. This evidence being admitted it was proper for the court to carefully instruct the jury as to the nature and purpose of it. The general rule is, that parole evidence is admissible only to explain latent ambiguities or to apply provisions of a will to the subject or person intended,

where the description is defective, uncertain, or too general to be understood specifically. When the process of identification of the subject-matter of the devise shows the existence of a subject which fully satisfies the terms of such devise, the object of that process, which is simply to apply a direction that would otherwise remain inoperative, is accomplished, no uncertainty is left to be cleared away, and it is not competent to show by further parole evidence that the testator actually intended to include something which is by the terms of his will excluded: Best v. Hammond, 55 Pa. 409; Root's Estate, 187 Pa. 118; Thompson v. Kaufman, 9 Pa. Superior Ct. 305; Smith v. Metzger, 32 Pa. Superior Ct. 596. There is no latent ambiguity in an instrument shown by extrinsic evidence, unless that evidence establishes that the description contained in the instrument is equally applicable to two distinct locations: Henry v. Huff, 143 Pa. 548; Fuller v. Weaver, 175 Pa. 182; Hughes v. The Westmoreland Coal Co., 104 Pa. 207. If there was an "old coal mine in the flat," or level land along Brush Run, it answers the description contained in the will and determines the rights of the parties to this controversy.

The plaintiff offered to prove by the witness Hitchman that the testator had pointed out to the witness the old coal bank and told the witness that that was the old coal bank to which he had run the line of division between the part of the farm which he had given to his nephew James G. Hunter and the part he had given to his nephew William A. Hunter; "for the purpose of showing what John Galloway intended and meant by the division of the farm between the two devisees by the description in the will." This testimony was admitted by the court below under an exception to the defendant, and is the subject of the sixth specification of error. The witness testified that the testator had told him that "he had divided the farm between his nephews leading right from the little swamp oak up past the old coal bank," and that the old coal bank was located "across the bottom from the road, across the bottom pretty near at the foot of the hill." The seventh specification of error raises the same question, and under the exception upon which this specification is based the plaintiff was permitted to

introduce evidence of an oral declaration of the testator made
to Dr. Fulton, as to the manner in which he had divided his
farm between James G. and William A. Hunter. Dr. Fulton
testified that the testator said to him, "I start my line and
my line passes through the coal bank just a little beyond that
tree. Then it passes straight across to a tree at the road. . . . .
James was to have the side with the building on and William
was to have the other side. William was to have up to that
line from that coal bank." The coal bank referred to was the
coal bank on the side of the hill. Dr. Fulton also testified that
he called the testator's attention to the fact that coal had also
been taken out down in the hollow. The question squarely
raised by these specifications of error is, can the oral declara-
tions of a testator, as to the disposition which he has made of
his property, be offered in evidence to vary the disposition of
that property which he has made by his written will? "In con-
struing a will, the object of the court is to ascertain, not
the intention simply, but the expressed intention of the testator,
i. e., the intention which the will itself, either expressly or by
implication, declares, or (which is the same thing) the meaning
of the words, the meaning, that is, which the words of the will,
properly interpreted, convey:" Hawkins on Wills, p. 1. The
question in expounding a will is not what the testator meant,
but what is the meaning of his words. The rule of law, there-
fore, is, that the writing is not to be altered or explained by
evidence aliunde: Iddings v. Iddings, 7 S. & R. 111; Asay v.
Hoover, 5 Pa. 21; Bruckman's Estate, 195 Pa. 363. When the
subject-matter of the devise contained in the will of John
Galloway came to be ascertained there was, under the existing
conditions of the testator's property, but one question to be de-
termined: the location of the old coal bank in the flat. If there
was a coal bank in the flat, the words which the testator had set
down in his will, there fixed the location of the line between the
lands of James Hunter and William Hunter. If, on the other
hand, there was no coal bank in the flat, then the description
could only apply to the coal bank in the side of the hill. It was
not competent to show by declarations of the testator made at
the execution of his will, or subsequently, that he intended the

devise to include something that was excluded by the terms of the will as executed. "The modern doctrine is, that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will, from necessity, to explain that which would otherwise have had no operation." This language was used by Justice ROGERS in Wusthoff v. Dracourt, 3 Watts, 240, decided in 1834, and has been recognized as authority to the present time. The testimony, admitted against the objection of the plaintiff, described a different line from that in the will. It was only because it did, that it was offered. The very difference, however, shows the error of the admission. The testator's line, represented by the will, gives to William Hunter all the land south of the old coal bank in the flat. The line proposed to be established by the parole evidence, as the line intended by the testator, ran from a tree up to the coal bank on the hillside. Thus to give effect to the testimony was to change the will of the testator, and make his oral declarations his will, instead of what he had executed and published according to the forms of law, as his will. That this testimony ought not to have been admitted is clearly established by authority: Best v. Hammond, 55 Pa. 409; Apple v. Byers, 98 Pa. 479; Willard's Appeal, 68 Pa. 327; Hancock's Appeal, 112 Pa. 532; Woelpper's Appeal, 126 Pa. 526; Myers v. Myers, 16 Pa. Superior Ct. 511. The sixth and seventh specifications of error are sustained.

The second and third points submitted on behalf of the defendant, while they recited certain facts, withdrew from the consideration of the jury a question of fact which under the evidence was disputed, namely, was there an old coal bank in the flat, or level land? These points asked for binding instructions in favor of the defendant, as did also the sixth point. The question of fact was for the jury and the points were properly refused. The tenth, eleventh and twelfth specifications of error are dismissed.

The judgment is reversed with a new venire.