Cook *v.* Babcock.

---

### PERLEY COOK *vs.* CAMDEN H. BABCOCK.

S. conveyed land to H., describing it as bounded "north on the line of Blandford "; the line of the town of Blandford was subsequently established by act of the legislature; after which H. conveyed to C. by a similar description.  It was held, that the line so established was the northern boundary of the land included in the deed from H. to C.; and that parol evidence was inadmissible to show that, prior to this act of the legislature, the line of Blandford was understood and reputed to be farther north than the line so established, and was defined by a line of marked trees, and that the deed from H. to C. was intended and understood by the parties to convey the same land included in the deed from S. to H.

THIS was an action of trespass *quare clausum fregit.*  The

defendant pleaded the general issue, and specified in defence property in himself. At the trial in the court of common pleas before *Mellen*, J., the jury returned a verdict for the plaintiff, and the case came before this court on a bill of exceptions, the substance of which appears in the opinion.

*M. Wilcox*, for the defendant.

*W. G. Bates* and *R. A. Chapman*, for the plaintiff.

SHAW, C. J.　On the trial of this action, the whole controversy turned on a question of boundary. The plaintiff asserts a title to a strip of land, now admitted to lie within the town of Chester, adjoining its southern boundary on the town of Blandford, but which the plaintiff insists, did formerly lie within the territory of the town of Blandford, on its northerly line, adjoining the town of Chester. The dividing line between Blandford and Chester was fixed by two acts of the legislature, passed respectively February 22, 1809, and June 13, 1810. These acts did not purport to set off any territory from one town to the other, but only to establish the true boundary.

The deed under which the plaintiff, by mesne conveyances, claims title, that of Thomas Herrick to Stephen and Henry Clark, describes the land granted, as " lying in said Blandford, part of lot 35, and bounded as follows : north, on the line of said Blandford," &c. The Clarks mortgaged back to Herrick by the same description ; Herrick assigned to Starkweather, and Starkweather to the plaintiff. The deed from Herrick to Clark bears date the 18th of January, 1815, being, as will appear by a comparison of dates, several years after the north boundary line of Blandford had been fixed. The plaintiff gave in evidence a deed from Abiah Sheldon to Thomas Herrick, dated the 16th of November, 1807, and a deed from John Blair, 2d, to Abiah Sheldon, dated the 2d of December, 1806, of the same premises, described as lying in Blandford, and bounded north on the line of the township. The plaintiff then offered evidence tending to show that, prior to said acts of the legislature, the dividing line of the town of Blandford was understood and reputed to run farther north than the dividing line of the towns, as fixed by said acts; that said ancient line was defined by a line of marked trees ; and contended

that the deeds of Blair to Sheldon and Sheldon to Herrick, con-
veyed the land as far north as the north line of Blandford was
then understood and reputed to be, and that the deed from
Herrick to Clark, though made after the north line of the
town had been thus fixed, was intended to convey the same
land, which he had acquired, and extended to the old reputed
line, and included the strip lying between said old line and
the line as thus fixed, although such land was then situated
in Chester by the legislative establishment of the line.    This
evidence, though objected to, was admitted; and although the
defendant requested the court to instruct the jury, that by
force of this deed the plaintiff could not claim land lying
in Chester, and north of the north line of Blandford, the court
declined so to instruct, but directed the jury that this was
*primâ facie* evidence that nothing north of the line of Chester
passed by it, but that it was not conclusive; and it was left
to the jury upon the evidence to decide whether the old line
was intended, and if so, to find for the plaintiff.

The court are all of opinion that this evidence was not
regularly admissible to control the precise description in the
deed, and that the direction to the jury was not correct.
When the description in a deed or devise is clear and ex-
plicit, and without ambiguity, there is no room for construc-
tion, or for the admission of parol evidence, to prove that the
parties intended something different.    A conveyance of land,
like a devise of land, is required by law to be in writing;
and registration is provided for, for the information of all
parties.    It is the intention of the parties, thus expressed and
recorded, and not an intent to be proved by evidence *aliunde*
and not expressed, which must govern.    When, indeed, upon
application of the description to the land, it is doubtful what
was intended, this is a latent ambiguity, and then evidence
*aliunde* may be given; as where a description gives the line
as running to a maple tree marked, and two maple trees are
found, either of which would answer the description.    So
here, if the words had been, the " reputed " line, or the
" supposed " line, or words of that description.    But the deed
from Herrick to Clark, on which the question arises, was

made after the dividing line between Blandford and Chester had been established by law, and must be presumed to have been known by the parties, from the use which they made of it in the deed, as a monument. There are two expressions in the deed, precise and unambiguous, admitting of no construction; first, the subject matter of the conveyance, land lying in Blandford; second, " bounded north on the town line." Nor is it enough to prove a mistake in the deed, by showing from the conveyancer, or any other evidence, that the grantor intended to convey by a supposed old line, not then the true town line. That would prove only an intention to convey land, not executed by deed, which by law would pass no estate. In this respect there seems to be no substantial distinction between a devise by will and a conveyance by deed, and the authorities bearing on one are applicable to the other, for the general rule. *Miller* v. *Travers*, 8 Bing. 244; *Doe* v. *Chichester*, 4 Dow, 65; *Doe* v. *Hiscocks*, 5 Mees. & Welsb. 363; *Brown* v. *Saltonstall*, 3 Met. 423. That the same rule applies as well to a deed as a will, and also that a line shall be deemed a monument, is established in *Flagg* v. *Thurston*, 13 Pick. 145. Where land had been conveyed, bounded on a road, and afterwards the road was changed, by which a small strip of the land conveyed was separated from the remainder, and afterwards the grantee mortgaged, by a description similar to that by which it was conveyed to him, bounding on the road, it was held that this bound must be taken as the road then existed, and did not include the strip separated by the change of the road. *Stearns* v. *Rice*, 14 Pick. 411. So, in a recent case, a quitclaim deed of land in Great Barrington was held not to pass land in Sheffield, though described as the same land bequeathed, &c., and the bequest extended to lands in the county of Berkshire, which included both. *King* v. *Little*, 1 Cush. 436.

It is quite possible that such a construction may sometimes defeat the intentions of parties, if courts were at liberty to look beyond the deed to ascertain such intent; but the law, for wise purposes, having expressly provided that real estate shall be conveyed only by deed, capable of being recorded, and read and examined by all who have an interest in know-

ing its terms and legal effect, the rule in question must be adopted and steadily adhered to ; otherwise, the purpose of the law would fail of being accomplished.

It is immaterial here to consider, whether by the deed from Sheldon to Herrick, before the town line was fixed by the legislature, the grantee took up to the then reputed line of Chester, or to the legal line as afterwards fixed ; because, if he took any land north of the latter, it did not pass by his deed to Clark, made after that line was fixed.

It is hardly necessary to remark here, that when an act of the legislature professes to change the line between two towns, and set off part of one to the other, it cannot affect the title to any land then vested ; and so when the true line has been long doubtful, and conveyances have been made, bounding on the reputed or supposed line, or line of actual holding and possession, and such reputed or supposed line is capable of being shown by proof, such conveyances will have their full effect, in passing the land up to such supposed line, though a different line be afterwards fixed by the legislature, as the true line, by a declaratory act.   Such a conveyance would take effect, within the principles above stated, because such would be the intent of the conveyance, manifested by the deed.

*Exceptions sustained.*